24-1076-cv
*Zayas v. Banks*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8ᵗʰ day of April, two thousand twenty-five.

PRESENT:
> ROBERT D. SACK,
> JOSEPH F. BIANCO,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

---

ROSA ZAYAS, as Parent and Natural Guardian of R.Z. and Individually, EDWIN ZAYAS, as Parent and Natural Guardian of R.Z. and Individually,

> *Plaintiffs-Appellants*,

v.                                                          24-1076-cv

DAVID C. BANKS, in his official capacity as Chancellor of New York City Department of Education, NEW YORK CITY DEPARTMENT OF EDUCATION,

> *Defendants-Appellees.*

---

FOR PLAINTIFFS-APPELLANTS:      RORY J. BELLANTONI (Carissa Shipley, *on the brief*), Brain Injury Rights Group, Ltd., New York, New York.

FOR DEFENDANTS-APPELLEES: CHLOÉ K. MOON (Devin Slack, *on the brief*), *for* Muriel Goode-Trufant, Acting Corporation Counsel of the City of New York, New York, New York.

Appeal from the judgment of the United States District Court for the Southern District of New York (Katherine Polk Failla, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on January 19, 2024, is **AFFIRMED**.

Plaintiffs-Appellants Rosa and Edwin Zayas, individually and as parents and natural guardians of their son R.Z., appeal from the judgment of the district court granting summary judgment in favor of Defendants-Appellees David C. Banks, in his official capacity as Chancellor of the New York City Department of Education, and the New York City Department of Education, and denying summary judgment to Appellants on their claims pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and Article 89 of the New York Education Law, N.Y. Educ. Law § 4401 *et seq.* Appellants assert that Appellees failed to offer R.Z. a free appropriate public education ("FAPE") and that Appellants are entitled to reimbursement of the costs of placing R.Z. at a private school. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

At the time state proceedings in this case commenced, R.Z. was a sixteen-year-old student. He suffers from cerebral palsy, seizure disorder, hydrocephalus, dystonia, and global developmental delay, and is legally blind, non-ambulatory, and non-verbal. In March 2021, a Committee of Special Education ("CSE") was convened to formulate an Individualized Education

2

Program ("IEP") for R.Z. for the 2021–2022 school year. Appellants were present at and participated in this meeting. The CSE determined that R.Z. would receive services based on an eligibility classification of traumatic brain injury and recommended an IEP that included, *inter alia*, placement in specialized classes with low student-to-teacher ratios at a District 75 ("D75") school;[1] individual occupational, physical, and speech-language therapy sessions; individual assistive technology services; and specialized transportation. Appellees later determined that R.Z. would be placed at the Horan School, a D75 school. Although they substantially agreed with the CSE's IEP recommendations, Appellants informed Appellees in June 2021 that they disagreed with placing R.Z. at the Horan School. As a result of this disagreement, Appellants notified Appellees that they intended to unilaterally enroll R.Z. at the International Institute for the Brain ("iBRAIN"), a private school, for the 2021–2022 school year, and that they would seek reimbursement from Appellees for the costs of attending that school. In July 2021, Appellants unilaterally reenrolled R.Z. at iBRAIN for the 2021–2022 school year.[2]

Later that year, in August 2021, the CSE reconvened to further assess R.Z.'s IEP as it related to the IEP's recommendations regarding assistive technology services. Although Appellees contend that they emailed and called Appellants to inform them of when the meeting would occur, Appellants assert that they received no such notice and therefore did not attend the meeting. As a result of the August 2021 meeting, the CSE recommended that R.Z. receive largely the same

---

[1] D75 schools are "highly specialized schools within the [New York City Department of Education] public school system" that "address student populations that require intensive support due to their disability classifications." Admin. R. at 708.

[2] R.Z. began attending iBRAIN in March 2020. The placement for the period before the 2021–2022 school year is not an issue in this appeal.

services that were recommended in March 2021, but it altered its recommendations regarding assistive technology services and reclassified R.Z.'s eligibility category from traumatic brain injury to multiple disabilities.

In October 2021, Appellants, pursuant to administrative procedures, filed a due process complaint alleging that Appellees denied R.Z. a FAPE for the 2021–2022 school year and seeking reimbursement of costs associated with placing R.Z. at iBRAIN. As relevant to this appeal, Appellants argued that R.Z. did not receive a FAPE because: (1) Appellants were denied the ability to meaningfully participate in the IEP process when Appellees held the August 2021 IEP meeting without them present and without providing them proper notice of that meeting; (2) Appellees failed to consider the report of Dr. Isabel Rodriguez, who evaluated R.Z. in connection with a separate educational proceeding after the March 2021 IEP meeting but before the August 2021 IEP meeting; (3) Appellees incorrectly changed R.Z.'s eligibility classification from traumatic brain injury to multiple disabilities; and (4) the Horan School was not an appropriate school placement for R.Z. An impartial hearing officer ("IHO") agreed with Appellants, determining that Appellees had denied R.Z. a FAPE, iBRAIN was an appropriate school location, and Appellants were entitled to reimbursement for the cost of tuition and related services at iBRAIN. Appellees appealed to the New York State Department of Education's Office of State Review, and, in April 2022, a State Review Officer ("SRO") reversed the IHO's decision, concluding that R.Z. had received a FAPE for the 2021–2022 school year and denying Appellants' request for reimbursement.

Appellants then appealed to a federal district court, seeking review of the SRO's decision that R.Z. received a FAPE and that Appellants were not entitled to reimbursements costs. After

Appellees filed an answer, the parties cross-moved for summary judgment based on the certified record. The district court granted summary judgment in favor of Appellees and denied Appellants' cross-motion for summary judgment. *See generally Zayas v. Banks*, No. 22-cv-7112 (KPF), 2024 WL 216761 (S.D.N.Y. Jan. 19, 2024). As an initial matter, the district court determined that the SRO's decision, as opposed to the IHO's decision, was entitled to deference. It then determined that R.Z. received a FAPE, and thus there was no IDEA violation, because the IEP was both procedurally and substantively adequate. In particular, the district court found that Appellants' absence from the August 2021 meeting did not constitute a procedural violation because, given their participation in the March 2021 meeting, they had been able to meaningfully participate in the IEP process. Moreover, the district court rejected Appellants' substantive challenges, concluding there was sufficient evidence to find that the Horan School was appropriate for R.Z. and that changes to R.Z.'s eligibility classification did not materially impact the IEP. Because it determined that the IEP was adequate, the district court then concluded that Appellants were not entitled to reimbursement for costs associated with enrolling R.Z. at iBRAIN.[3]

## DISCUSSION

On appeal, Appellants contend that the district court erred by deferring to the SRO's decision, instead of the IHO's decision, and concluding that R.Z. was not denied a FAPE even

---

[3] Before filing their appeal, Appellants moved for reconsideration of the summary judgment decision, pursuant to Federal Rules of Civil Procedure 59(e) and 60(b). The district court denied that motion. *See generally Zayas v. Banks*, No. 22-cv-7112 (KPF), 2024 WL 1657880 (S.D.N.Y. Apr. 17, 2024).

though, according to Appellants, his IEP was both procedurally and substantively inadequate. We address each of these arguments in turn.

"We review *de novo* the district court's grant of summary judgment in an IDEA case. Summary judgment in this context involves more than looking into disputed issues of fact; rather, it is a pragmatic procedural mechanism for reviewing administrative decisions." *A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009) (internal quotation marks and citations omitted). Therefore, the reviewing court "engage[s] in an independent review of the administrative record and make[s] a determination based on a preponderance of evidence." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012) (internal quotation marks and citation omitted). "In conducting such an independent review, courts must give due weight to the state administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (alteration adopted) (internal quotation marks and citations omitted).

I. **Deference to the SRO**

As a threshold matter, Appellants argue that the district court erred by finding that the SRO's decision warranted deference and contend that the district court instead should have deferred to the IHO's decision because, as the finder of fact, the IHO was in the best position to assess the relevant facts and witnesses, including Dr. Rodriguez's conclusions and testimony, and issued a "well reasoned" opinion based on the weighing of that evidence. Appellants' Br. at 21. We disagree.

Generally, the district court must "defer to the final decision of the state authorities, that is, the SRO's decision." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012) (internal

quotation marks and citation omitted). Moreover, where, as here, the IHO and SRO reach different results, "a court *must* defer to the SRO's decision . . . unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *Id.* (emphasis added). Here, the SRO issued a 27-page decision, which outlined the case's procedural history; thoroughly summarized R.Z.'s IEP; explicitly considered Appellants' procedural and substantive objections; assessed, with citations to the record, relevant evidence, including testimony from school psychologists, the Horan School assistant principal, and Dr. Rodriguez, as well as documents from CSE meetings; and explained its conclusions. Further, as for Dr. Rodriguez, the SRO carefully considered her testimony that iBRAIN was a more appropriate placement for R.Z. and determined that it should be given little probative weight because it was "rife with generalizations and unsupported hypotheticals about other classrooms, different years, and safety concerns, and stereotypes of students with different disability classifications, which [were] particularly unconvincing given that [Dr. Rodriguez] did not conduct an observation of the proposed classroom [at the Horan School] or of [R.Z.]." App'x at 77–78.[4] Moreover, to the extent Appellants contend that the IHO decision is better-reasoned than the SRO decision such that it would be potentially entitled to any deference, that argument is unavailing. Unlike the SRO's decision, the IHO's decision does not explain the connection among its findings of fact, its assessment of relevant evidence, and its conclusion that R.Z. was denied a FAPE. In sum, because the SRO's decision was "thorough and careful," *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998), and was "reasoned and supported by the record," *Gagliardo v. Arlington*

---

[4] Dr. Rodriguez's report indicates that she evaluated R.Z. in three video sessions but did not observe him in person. *See* Admin. R. at 800.

7

*Cent. Sch. Dist.*, 489 F.3d 105, 114 (2d Cir. 2007), we conclude that the district court was correct to give the SRO's decision deference.

## II.    Adequacy of the IEP

We also find unpersuasive Appellants' arguments that they are entitled to reimbursement for R.Z.'s placement at iBRAIN because R.Z. was denied a FAPE due to his inadequate IEP and his placement at the Horan School.

To determine whether a student was denied a FAPE, thereby entitling the parents to seek reimbursement for unilaterally making an enrollment decision for their child, we must first consider whether the IEP was appropriate. *See Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985); *accord C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 76 (2d Cir. 2014). In doing so, we assess both the procedural and substantive adequacy of the IEP. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206–07 (1982). An IEP is procedurally adequate if it "has complied with the procedures set forth in the IDEA." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 160 (2d Cir. 2014) (internal quotation marks and citation omitted). Parents are entitled to reimbursement for procedural violations only if they "impeded the child's right to a [FAPE]," "significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a [FAPE] to the parents' child," or "caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii). "Multiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not." *R.E.*, 694 F.3d at 190 (internal citation omitted). An IEP is substantively adequate if it is "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 207. If an IEP is found to be substantively inadequate, parents are

"automatically entitle[d]" to reimbursement. *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 143 (2d Cir. 2013) (internal quotation marks and citation omitted).

### A. Procedural Violations

Beginning with the procedural challenges, Appellants contend that Appellees violated IDEA procedures by holding the August 2021 meeting in their absence and by not considering Dr. Rodriguez's report in fashioning R.Z.'s IEP. These arguments are unavailing. Even assuming *arguendo* that these alleged deficiencies constitute procedural violations, we conclude that the district court was correct in determining that the violations, both individually and cumulatively, did not deny R.Z. a FAPE because they did not significantly impede Appellants' ability to participate in the IEP process or deprive R.Z. of educational benefits.

As for Appellants' absence from the August 2021 meeting, it is undisputed that Appellants attended and actively participated in the March 2021 meeting when R.Z.'s IEP for the 2021–2022 school year was first created, and that Appellants believed that this IEP was adequate, apart from the recommendation to place R.Z. at the Horan School. The record indicates that the IEP resulting from the August 2021 meeting was largely equivalent to the original March IEP, except for, namely, revisions made to the recommendations regarding R.Z's assistive technology services, which Appellants do not take issue with on appeal.[5] Given the substantial similarities between the two IEPs, and the fact that Appellants do not dispute that they participated in devising the material recommendations contained therein, their absence from the August meeting did not significantly impede Appellants' ability to participate in the IEP decision-making process. *See T.P. ex rel. S.P.*

---

[5] As noted above, Appellees also changed R.Z.'s disability reclassification from traumatic brain injury to multiple disabilities. Appellants assert that this change impacted the substantive adequacy of R.Z.'s IEP, but for the reasons set forth below, we conclude that this classification change was immaterial.

*v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 253 (2d Cir. 2009) (explaining that no procedural violation occurs where there is evidence that "parents meaningfully participated" in an IEP meeting); *cf. T.K. v. N.Y.C. Dep't of Educ.*, 810 F.3d 869, 876 (2d Cir. 2016) (finding a procedural violation where parents were denied the opportunity to participate in "two separate meetings, both of which were integral to the development of [the student's] IEP").

Appellants also argue that Appellees committed a procedural violation by failing to consider Dr. Rodriguez's report when updating R.Z.'s IEP, which Appellants contend could have led to a different school placement recommendation. We disagree. As an initial matter, we have held that an IEP is not required to contain a recommendation for a specific school placement, and the absence of one in an IEP does not constitute a procedural violation. *See T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 420 (2d Cir. 2009). Further, as explained above, the SRO appropriately afforded little weight to Dr. Rodriguez's recommendation that iBRAIN was a more appropriate placement because the recommendation was based on "generalizations and unsupported hypotheticals." App'x at 77–78. As such, any failure on the part of Appellees to consider Dr. Rodrigeuz's report did "not necessarily have a direct effect on the substantive adequacy of" R.Z.'s IEP. *R.E.*, 694 F.3d at 191; *see Mr. P v. W. Hartford Bd. of Educ.*, 885 F.3d 735, 754 (2d Cir. 2018) (finding that the absence of a teacher from an IEP meeting, without any showing by appellants that the teacher "could have provided meaningful input into the development of the IEP . . . did not rise to the level of a procedural violation of the IDEA").

In sum, Appellants' alleged procedural violations—considered individually and cumulatively—did not deny R.Z. a FAPE because the alleged violations did not impact R.Z.'s services or impede Appellants' ability to participate in the IEP process. Therefore, the district

court correctly concluded that Appellants were not entitled to reimbursement based on any procedural violation.

## B.     Substantive Violations[6]

Turning to whether the IEP is substantively adequate, Appellants first assert that the district court erred in rejecting their arguments that the Horan School was an inappropriate placement location because R.Z. could have been grouped in classes with students with needs significantly different from his.   We are unpersuaded.   "[C]hallenges to a school district's proposed placement school must be evaluated prospectively (i.e., at the time of the parents' placement decision) and cannot be based on mere speculation."   *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 244 (2d Cir. 2015) (internal quotation marks and citation omitted).   "Speculation that the school [] will not adequately adhere to the IEP is not an appropriate basis for unilateral placement."   *R.E.*, 694 F.3d at 195; *see also M.O.*, 793 F.3d at 244 ("[I]t is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's mandates.").   Here, we agree with the district court that Appellants' contentions amount to speculation.   The Horan School's assistant principal testified that the school was capable of fully implementing the IEP, and R.Z. himself had not been inappropriately grouped because he had never attended the school. Moreover, the SRO reasonably discounted Dr. Rodriguez's conclusions that R.Z. would be improperly grouped at the Horan School with children with needs different from his because she did not testify based on any specific information about R.Z.'s proposed classes and had not visited

---

[6]   It is not clear that Appellants challenge the substance of the IEP itself; rather, their substantive challenges relate to their claims that the Horan School was incapable of properly implementing the IEP, and that the change in R.Z.'s classification from traumatic brain injury to multiple disabilities would result in improper grouping.   We consider these arguments, for purposes of this decision, as challenges to the substantive adequacy of the IEP.

the school.   Indeed, the record indicates that Dr. Rodriguez had not visited any D75 school in at least the two years before she issued her report.   Accordingly, Appellants' arguments that R.Z. would be inappropriately grouped amounts to speculation that the Horan School would not have properly implemented R.Z.'s IEP.   *See R.E.*, 694 F.3d at 195; *see also Polanco v. Banks*, No. 23-373, 2024 WL 2105530, at *2 (2d Cir. May 10, 2024) (summary order) (concluding that a grouping challenge was speculative because plaintiffs failed to demonstrate that the student would be improperly grouped and there was testimony in the record explaining that the school could provide appropriate grouping); *J.C. v. N.Y.C. Dep't of Educ.*, 643 F. App'x 31, 33 (2d Cir. 2016) (summary order) (explaining that "grouping evidence is not the kind of non-speculative . . . evidence" sufficient to challenge the substantive adequacy of an IEP).   Thus, the district court correctly determined that Appellants' grouping claims did not constitute a substantive violation.

Finally, Appellants argue that the IEP is substantively inadequate because R.Z.'s classification changed from traumatic brain injury to multiple disabilities.   This argument is similarly unavailing because the change in classification was immaterial to whether R.Z.'s IEP provided him with a FAPE.   Appellants agree that the disability classification determines whether a student is eligible to receive services, but that it does not determine what those services are.   *See* Appellants' Br. at 32; *see also Navarro Carillo v. N.Y.C. Dep't of Educ.*, No. 23-2639, 2023 WL 3162127, at *2 (2d Cir. May 1, 2023) (summary order) ("Disability classification is used for one and only one purpose:   to ascertain whether a child . . . [is] eligible for special education services." (internal quotation marks and citation omitted)).   Thus, as the SRO explained, because there was no dispute about R.Z.'s eligibility for special education, the change in his disability classification "did not impact the goals, accommodations, or special education services in the student's IEP and,

12

therefore, had no impact on [Appellees'] offer of a FAPE to [R.Z.]." App'x at 70. Accordingly, we agree with the district court that R.Z. was not denied a FAPE on the grounds that his disability classification was changed.

*                         *                         *

We have reviewed Appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13